UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
MAY KATTARIA,                                    COMPLAINT

                                                 25 cv 2822

                                                 ECF Case
                Plaintiff,
        vs.

The CITY OF NEW YORK, JOHN DOES,                 JURY TRIAL DEMANDED
in their individual and official capacities,

                Defendants.
-------------------------------------------------------------x

Plaintiff May Kattaria, by her attorney, Cyrus Joubin, complaining of the Defendants, respectfully alleges as follows:

## PRELIMINARY STATEMENT

1. This action arises from various civil rights violations against May Kattaria ("Plaintiff" or "Ms. Kattaria") by New York City police officers. Plaintiff asserts constitutional claims pursuant to 42 U.S.C. § 1983 ("Section 1983") against the individual defendants for false arrest, failure to intervene, and supervisory liability. Additionally, Plaintiff asserts analogous claims under New York State and New York City Law against the individual defendants, and against the City of New York under the doctrine of *respondeat superior*. Plaintiff seeks compensatory and punitive damages, costs, disbursements, and attorney's fees pursuant to applicable state, municipal, and federal civil rights law.

## JURISDICTION

2. This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and

1

the Fourth Amendment to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343 (a)(3) and (a)(4), this being an action seeking redress for the violation of Plaintiff's constitutional and civil rights.

3. Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over any and all non-federal claims and causes of action which derive from the same nucleus of operative facts and are part of the same case or controversy which gives rise to the federally based claims and causes of action.

## VENUE

4. Venue is proper in the United States District Court for the Eastern District of New York pursuant to 28 U.S.C. § 1391(b) because the acts complained of occurred in this district.

## JURY DEMAND

5. Plaintiff respectfully demands a trial by jury on each and every one of her claims as pled herein, pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6. The individual defendants are and were at all times relevant herein officers, employees and agents of the New York City Police Department ("NYPD").

7. On the date of the incident giving rise to this complaint, the individual defendants were assigned to the NYPD 121st Precinct.

8. Each individual defendant is sued in his individual and official capacity. At all times mentioned herein, each individual defendant acted under the color of state law, in the capacity of an officer, employee, and agent of defendant City of New York ("Defendant City").

9. Defendant City is a municipality created and authorized under the laws of New York State. It is authorized by law to maintain, direct, and to supervise the NYPD, which acts as its law enforcement agent and for which it is ultimately responsible.

## NOTICE OF CLAIM

10. Plaintiff served a Notice of Claim on the Comptroller of the City of New York within ninety days of the incident. At least 30 days have elapsed since the service of the Notice of Claim, and adjustment and payment has been neglected or refused.

11. This action has been commenced within one year and ninety days after the occurrence of the event upon which the claims are based.

## STATEMENT OF FACTS

12. In the early evening hours of February 24, 2024, Plaintiff was sitting in her car with her six-year-old daughter, LK, parked outside the NYPD 121st Precinct (970 Richmond Avenue) in Staten Island, New York.

13. Plaintiff was waiting for her ex-husband, Mohammed Kattaria, to arrive and take custody of LK under the terms of a court-ordered visitation arrangement.

14. Plaintiff and Mr. Kattaria had been embroiled in a bitter divorce and custody battle, and the police officers in the 121st Precinct were familiar with their toxic relationship, their ongoing Family Court strife, and the court-ordered exchange of LK scheduled to take place inside the precinct, which exchange had taken place in the precinct on numerous prior occasions.

15. Because Mr. Kattaria was over fifteen minutes late, Plaintiff went inside the precinct to ask that an officer reach out to him, and she was informed that Mr. Kattaria was on his way.

16. When Mr. Kattaria arrived in his car with the couple's two other children – AK (a 14-year-old boy) and MK (a 10-year-old girl) – Plaintiff gathered her belongings and prepared to hand off LK to Mr. Kattaria inside the precinct.

17. Suddenly, AK and MK rushed toward Plaintiff and began grabbing LK.

18. Plaintiff did not release LK, telling AK and MK that the hand-off of LK was supposed to occur inside the precinct with Mr. Kattaria, and she carried LK into the 121st Precinct.

19. AK and MK followed Plaintiff and LK into the precinct, while Mr. Kattaria remained in his car.

20. Inside the precinct, Plaintiff pleaded for officers to help, and two male officers – John Does 1 and 2 – told AK and MK to step away from Plaintiff; the officers told AK and MK that it was their father's responsibility, not theirs, to pick up LK.

21. Seeing that Mr. Kattaria was remaining in his car and not entering the precinct to pick up LK, the officers repeatedly asked AK to get his father, saying, "Your dad needs to come up here for pick up."

22. When AK called his father, Mr. Kattaria refused to come inside the precinct and inexplicably remained in his car for about twenty minutes.

23. At one point, one of the officers took the phone from AK and directed Mr. Kattaria to pick up LK inside the precinct, saying "Sir, I'm not going to go back and forth with you; she's not supposed to give LK to your children because they're under 18-years-old; you need to come up and take your kids."

24. When Mr. Kattaria finally exited his car and entered the precinct, he began screaming, "She hit my daughter!"

4

25. At this point, a third officer – Jane Doe – appeared.

26. Mr. Kattaria falsely accused Plaintiff of assaulting MK right outside the precinct, and he further indicated that there was an order of protection against Plaintiff prohibiting her from striking MK.

27. At no point prior to Mr. Kattaria's entry into the precinct did any of the children say anything about MK being assaulted by Plaintiff, and at no point did MK show any sign of physical pain, distress, or discomfort.

28. None of the three officers observed any assault, or any indication of assault, by Plaintiff against her daughter MK.

29. Plaintiff explained to the officers that the assault accusation was false, motivated by Mr. Kattaria's ill will; and she asked that the officers look at the NYPD security videos – which captured the front of the precinct where the alleged assault had taken place – in order to see the baseless, fabricated nature of Mr. Kattaria's accusations.

30. Plaintiff reminded the officers of Mr. Kattaria's motives to lie and insisted that the security videos would show that she had done nothing wrongful towards MK in the course of bringing LK inside the precinct.

31. Plaintiff also told the officers about the suspicious circumstances of this particular hand-off, in which her older children tried grabbing LK from her while Mr. Kattaria remained in his car.

32. While Plaintiff attempted to explain her innocence, Mr. Kattaria seethed in anger, screaming, "Arrest her, arrest her! She hit my daughter!"

33. Despite Mr. Kattaria's animus and motives to lie, and despite the opportunity to confirm Plaintiff's innocence by looking at NYPD security video from the front of the

precinct, Officer Jane Doe told Plaintiff, "Ma'am, I'm sorry, but I have to place you under arrest."

34. Plaintiff was handcuffed in front of her three children (Arrest No. S24601813).

35. When Plaintiff questioned why she was being arrested, Jane Doe responded, "I'm just doing my job."

36. Plaintiff asked, "But isn't your job to investigate and look at the security videos?"

37. Officer Jane Doe stated, falsely and absurdly, that she couldn't view the precinct security videos.

38. During this interaction between Plaintiff and Officer Jane Doe, a male sergeant appeared – Sergeant John Doe 3 – who heard Plaintiff's explanations of innocence and her pleas that the officers look at the precinct video footage, and he stated, "It will be handled in Court."

39. None of the defendant officers bothered to check or obtain the security camera footage outside the precinct that would have vindicated Plaintiff and shown her innocence.

40. When Plaintiff asked what the basis of her arrest was, Jane Doe stated that her daughter MK accused Plaintiff of scratching her.

41. During arrest processing, Jane Doe expressed her familiarity with Plaintiff's family background and Family Court proceedings, and apologized to Plaintiff, stating that Plaintiff "shouldn't have been arrested."

42. Jane Doe apologized repeatedly, stating: "I'm just trying to do my job. Because your daughter said you scratched her, I have to take her word for it."

43. After being detained, fingerprinted, photographed, and processed in the precinct, Plaintiff was transported to Central Booking in Staten Island where she spent the night in filthy, dangerous conditions.

44. The Richmond County District Attorney's Office declined to prosecute Plaintiff, resulting in Plaintiff's release from Central Booking in the afternoon of February 25, 2024.

**DELIBERATE ACTS UNDER COLOR OF STATE LAW**

45. All of the aforementioned acts of the individual defendants, their agents, servants and employees, were carried out under the color of state law in the course and scope of their duties.

46. All of the aforementioned acts deprived Plaintiff of the rights guaranteed to citizens of the United States by the Fourth Amendment of the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

47. The individual defendants acted willfully, knowingly, and with the specific intent to deprive Plaintiff of her constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth Amendment of the United States Constitution.

**DAMAGES**

48. As a direct and proximate cause of the said acts of the Defendants, Plaintiff suffered the following injuries and damages:

a. Violation of her constitutional rights under the Fourth Amendment to the United States Constitution;

b. Loss of Liberty

c. Severe emotional distress, degradation, and suffering.

## SECTION 1983 CLAIMS

## FIRST CLAIM

## False Arrest Under Section 1983

49. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

50. By the actions described above, the individual defendants deprived Plaintiff of her Fourth Amendment right to be secure in her person against unreasonable searches and seizures, specifically her right to be free from false arrest.

51. As detailed above, the individual defendants intentionally arrested and detained Plaintiff without probable cause, without a warrant, without privilege or consent.

52. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## SECOND CLAIM

## Failure to Intervene Under Section 1983

53. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

54. Each and every individual defendant had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of her constitutional rights by other law enforcement officers.

55. The individual defendants – specifically, John Does 1-2 – failed to intervene on Plaintiff's behalf to prevent, end, or truthfully report the violations of her constitutional rights by arresting officer Jane Doe despite knowing about such violations and having had a realistic opportunity to do so.

56. As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

### THIRD CLAIM

### Supervisory Liability

57. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

58. Defendant Sergeant Doe, as the NYPD sergeant supervising the arrest of Plaintiff, directly participated in the violations of Plaintiff's constitutional rights by ordering and authorizing Plaintiff's arrest, without a reasonable investigation, despite her demonstrable explanations of innocence.

59. At a minimum, Sergeant Doe was grossly negligent in supervising his subordinate officers as they committed the constitutional wrong of false arrest upon Plaintiff.

60. As a direct and proximate result of the aforementioned conduct of the individual defendants, Plaintiff sustained the damages and injuries hereinbefore alleged.

### PENDENT STATE CLAIMS

### FIRST CLAIM

### False Imprisonment under N.Y. State Law

61. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

62. The individual defendants intentionally arrested and detained Plaintiff without probable cause, without a warrant, and without privilege or consent.

63. As a direct and proximate result of the misconduct and abuse of authority detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## SECOND CLAIM

**Right of Security Against Unreasonable Search and Seizure and Excessive Force Under New York City Administrative Code**

64. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

65. As detailed above, the individual defendants intentionally violated Plaintiff's right to be secure against unreasonable searches and seizures, and against excessive force, in violation of New York City Administrative Code Title 8, Chapter 8: The Right of Security Against Unreasonable Search and Seizure and Against Excessive Force Regardless of Whether Such Force Is Used In Connection with a Search or Seizure. § 8-803 Civil action for deprivation of rights.

66. As a direct and proximate result, Plaintiff sustained the damages and injuries hereinbefore alleged.

## THIRD CLAIM

**Negligent Hiring/Training/Retention of Employment Services Under N.Y. State Law (Against Defendant City of New York)**

67. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

68. Defendant City owed a duty of care to Plaintiff to prevent the violations and abuse sustained by Plaintiff.

69. Upon information and belief, all of the individual defendants were unfit and incompetent for their positions.

70. Defendant City knew or should have known through the exercise of reasonable diligence that the individual defendants could potentially cause harm.

71. Defendant City's negligence in hiring, screening, training, disciplining and retaining the individual defendants proximately caused Plaintiff's injuries.

72. As a result of its negligent conduct, Defendant City has directly and proximately caused the damages and injuries hereinbefore alleged.

## FOURTH CLAIM

### Respondeat Superior Under N.Y. State Law

73. Plaintiff realleges and reiterates all allegations set forth in the preceding paragraphs as if stated fully herein.

74. Defendant City is the employer of the individual defendants.

75. Under the doctrine of *respondeat superior*, the Defendant City is responsible for the wrongdoing of its employees acting within the scope of their employment.

76. As a direct and proximate result of the acts of the individual defendants detailed above, Plaintiff sustained the damages and injuries hereinbefore alleged.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands the following relief jointly and severally against the Defendants:

    a.    An order awarding compensatory damages for Plaintiff May Kattaria in an amount to be determined at trial;

    b.    An order awarding punitive damages in an amount to be determined at trial;

    c.    A court order, pursuant to 42 U.S.C. § 1988, that Plaintiff is entitled to reasonable attorney's fees, costs and disbursements; and

    d.    Such other and further relief as this Court may deem appropriate.

DATED:    May 20, 2025
               New York, New York

CYRUS JOUBIN, ESQ.
43 West 43rd Street, Suite 119
New York, NY 10036
347-349-0724
joubinlaw@gmail.com
Attorney for May Kattaria